May it please the court, my name is Daniel Hoesen with the Federal Public Defender's Office and I represent Mr. Garcia. He raises three issues on appeal. First, the district court erred by giving inadequate justification for the 108-month sentence. Guideline range was 57 to 71 months. Due to the magnitude of the upward variance, a 37-month upward variance that was more than 50% of the high end of the advisory guideline range, the district court had to give compelling justifications for the sentence, and it did not do so. The district court referred to as reasons for the upward variance deterrence, but referring to deterrence is not an adequate justification and this court's decision in Miller would be suggestive and supportive of that. Criminal history was something the district court referred to, but criminal history is already contemplated and reflected in the guidelines range. Also, the district court referred to child support, but an $8,000 arrearage, as was mentioned, hardly takes into consideration the fact that Mr. Garcia is poor, underemployed, is incarcerated for periods, and has limited ability to pay that debt. So I really think that that is an irrelevancy as much as anything, but certainly a consideration that doesn't reflect what the facts were of this case and why the arrearage would exist. So I don't believe that adequate justification was given by the district court. Unless the court has questions for me, I'd like to turn to the second issue, and that is the district court 108-month sentence is also erroneous because the district court stated that it intended to impose a sentence that was 27 months above the high end of the guideline range. So it is... What did he actually impose at sentencing? 108 months. Isn't that what counts? No, because procedurally, if the district court... that wouldn't count. It's what he said in court. Well, he said inconsistent things in court, though. He said 27 months above the high end of the guideline range, and he said 108-month sentence. Well, the high end of the guideline range was 71 months, so 71 plus 27 would be 98, not 108. So there's a patent ambiguity here, a problem. And I'd rely on this court's decision in United States v. Bartlett, and that is a sentence that is supposed to be something but isn't reflects procedural error. So very clearly, 108 months isn't 27 months above the high end of the guideline range. What did the actual sentence... When he sentenced, did I sentence you to what? What did he say? 108 months. And under United States v. Gall, his explanation for why the sentence should be what it was, he picked a number that said it should be 27 months above the high end of the range, and I recite these reasons to support the upward variance. He said 27 months, and that is not 108 months. Then the resulting sentence was 37 months above the high end of the range. So there's an ambiguity here. There's a procedural error. And we'd rely on Bartlett and Gall for support for our proposition on that. And now I'd like to address supervised release. And I'd like to say this about supervised release. It was certainly improperly imposed, and we have Thompson and Kappas to support us on that. The remedy for that error is full resentencing. And, again, I rely on Thompson and Kappas, and I recognize Sewell and Sandage, which are at odds with that remedy. But I hasten to add this. We're not trying to drive people crazy with challenges in supervised release. We want them to be correct. But we'd also like stock to be taken of what it is that happens as a result of these conditions. And all of the conditions that have been adopted and imposed as part of supervised release were taken from the context of probation.  I take it in the context that we did away with parole the same time we did the sentencing guidelines, and we haven't had parole since then. Yes, but we still have probation. Well, true, but probation with parole is imposed when governed by a parole board at the time of release, rather than trying to guess 20 years down the line or 15 years down the line. Yes. But my point is this. If we really believe in these conditions and their efficacy and their ability to deter and rehabilitate people, we should be embracing the conditions and the purpose that they can serve as a way of giving people a sentence that is less incarceration. I think our recent cases, and even this week we've had opinions to say what you're arguing there. But the problem is, and one of the things is trying to predict for, say, a 15-year sentence, what this person is going to be like 15 years from now. That's real imponderable. And try to come up for a sentencing judge to come up with conditions of release 15 years later is a real problem. Yes, and I know the language about the crystal ball that was in the opinion. But judges don't need a crystal ball because judges have supervised release. They can be of a certain period or extended. Wouldn't the answer, a possible solution to Judge Kaney's, the problem Judge Kaney has flagged, is that the judge on the eve of the person's release should have a hearing whether to modify any of the conditions. Because, of course, the behavior of the prisoner in 12, 15 years, however long in prison, may suggest need for fewer conditions, different conditions. Yes, absolutely. They could participate in all sorts of rehabilitation while incarcerated, and it's unnecessary to duplicate that expense and impose that on people when they come out. But my point is this. Whatever the conditions that are necessary, follow the best practices that were stated in Siegel, but give defendants a partial term of probation. Give them a chance to be conditionally free, live under the important conditions, and if they don't follow them, revoke their supervised release, put them back in jail. They've got an additional period of supervised release. It can be up to five years incarceration per term of supervision. If they do well on supervised release, everybody wins, and at less cost to society and to the individual defendant. There is nothing that can't be done differently and better than how we're doing it now. Supervised release is true. Of course, Judge Posner is suggesting an idea that you come back to the trial judge if, who knows, 15 years later. It may or may not be the same trial judge. That's the problem too. But at least evidence could be presented to that judge about the condition of this person being released after whatever number of years it is, and then make the evaluation of what conditions might be necessary. I think that's the better way. It makes a lot more sense. And why we're doing it this way is because we've done it for this. This has been the practice for 30 years. We shouldn't continue to do something just because we always have. That's perhaps the worst justification for something. We should find a better way. There are many of them, and I think it should happen on the district court level. I think the judges there are going to have the opportunity to retool this, reassess this, do this better than it's ever done before, and it should. Unless the court has questions of me, I have nothing further. Thank you very much, Mr. Ellis. Mr. Halleck? Morning. May it please the Court? I'm Assistant United States Attorney Michael Halleck, and I represent the United States in this matter. Counsel? The district court did not abuse its discretion when it imposed a sentence of 108 months. But since the case has to go back, I mean, you've conceded that there has to be a remand for reevaluation of conditions of supervised release. Wouldn't it be appropriate to say to the judge, you know, you added 51 and 20. You added, no wait. I believe the judge just spoke. He added 51 and, well, I forgot. He added. Judges aren't mathematicians. No, he got 108, but his addition should have produced 98. So when he's going to go back to correct the conditions of supervised release, wouldn't it make sense for him to say, well, I made this arithmetical error. Now, he may decide that, well, really his intent was the 108. It wasn't just to put two numbers together and sentence whatever that sum was. Wouldn't that be better? Because he may have been in an accident. He may really have wanted to sentence him to the sum of the 27 months and the, what, 71 months, right? That's a possibility, Your Honor. However, I believe from the transcript it is evident that he did intend to sentence him to 108 months, and that he just imparted. But how can you tell from the transcript whether he intended that because he had added 27 and 71 and gotten 108 instead of 98? You're correct. It's difficult to tell. That is my reading. Well, then why not, since it is difficult and since he's going to be resentencing him on supervised release, or at least reconsidering, why not take him five minutes, right? That's true, Your Honor. I think that's a possibility, that that will be the result. Obviously, that's in your hands. I believe from my reading of the transcript that he did intend to sentence the appellant to 108 months. He wouldn't find any problem if we sent it back that way, the way Judge Posner suggested. Your Honors, whatever you decide, I would have no problem with. However, in this case, I think it is, as I have stated, 108 months was the sentence he intended to pose, and he intended to impose that because, like he said, this appellant, he has a bad history. He looked at the history. He looked at the serious nature of this offense. This was distribution of heroin. This is a serious offense. Well, but he did make some reference to the low end of the career offender guideline, too. It's clear that he was trying to balance something in there. Correct, correct. He was looking at the career offender guidelines. He was looking at the guidelines in this case. And he also took into account the recommendation of the assistant U.S. attorney, Mr. Norwood. Mr. Norwood did recommend a sentence of 120 months. And I certainly want to mention that he also took into account the mitigating factors because that is also important. Perhaps the government may have argued he's almost a career offender. Exactly. He's close to a career offender. And as you all know, there were two instances, both the fleeing, which was not charged, and also the time in which the instant, or I guess the underlying heroin sale occurred, which could have made him a career offender. So, yes, that's a good way to look at it. He was almost a career offender. And because of that, the judge decided that 108 months was appropriate. However, obviously, if Your Honors decide that full remand is necessary in this case, I See, he did say that he felt that a 27-month above the guideline range is appropriate. That suggests his focus was on the 27 months that he was adding to the 71 rather than on 108. Another minor point, which your opponent mentioned, the business about his $8,000 in unpaid child support, there really wasn't any way he could have paid that. Well, Your Honors, I don't think we can say that there was no way he could have paid that. People in society have debts all the time, which managed to get paid. This is one that didn't get paid. I don't think we could say that he had no means to pay it. But the issue wasn't explored. That issue was not explored. But it's certainly worth, I think, I mean, the judge obviously used that, as well as many other, you know, the letter to the court in which he thinks the defendant did not properly understand that he was, you know, guilty of many crimes, that he didn't understand the seriousness of the offense, which was heroin distribution and the seriousness of his prior criminal record, which had many, as you know, many serious offenses of drug dealing and such. But it might not be the ultimate decision of the court, but I do think that a limited remand is appropriate in this case just to determine the supervised release conditions and what the district court, which ones the district court wants to impose and to get those supervised release conditions in line with the jurisprudence of recent cases in this court. If there are no further questions. Let me ask you one other question. Yes, Your Honor. And you may not know the answer to this. Does the Southern District of Illinois have a general order or did it have a general order with regard to supervised conditions of release? We've already found one district that did. Whether they were just standard? In other words, they would refer to the standard conditions of supervised release and the district had adopted, I think in that case, the Northern District of Indiana at 16. Well, I did notice before these supervised release cases, Caffey's, Thompson, et cetera, that there were essentially standard conditions which were imposed. And I also want to note that since the jurisprudence of this Seventh Circuit that those have been revised and they are now in line with the opinions of this court. Is that a general order of the district or where do they come from? I don't know if it's a general order, but they do have, I guess, standard conditions which the judges draw from. Well, it really is just a matter of interest because the Northern District of Indiana had done it as an entire court as the whole district and they referred to it that way and that's where some of the problems came in. And maybe it's just judge by judge in the Southern District. Yes, that's a possibility, Your Honor. However, I know that the judges certainly now are looking at each condition and the reasonableness of each condition. Thank you, Your Honors. Thank you very much, Mr. Hallin. Mr. Hillis, have you anything further? No, Mr. Court. Thank you. And were you appointed? Federal. You're a defendant. Well, we thank you very much. We thank you, Mr. Hallin. I last?